UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| OPENMIND SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-39, <br><br> Defendants. <br> _____ / | No. C 11-3311 MEJ <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED EXPEDITED DISCOVERY** <br><br> **Docket No. 6** |

## I. INTRODUCTION

Plaintiff OpenMind Solutions, Inc. ("Plaintiff") has filed an *ex parte* Application pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 45, requesting leave to take expedited discovery to determine the identity of 39 Doe Defendants (collectively, "Defendants") named in this action. Dkt. No. 6 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's Application with respect to Doe Defendant 1, but **DENIES** the Application with respect to Doe Defendants 2-39. Further, because Plaintiff has failed to demonstrate that joinder of Doe Defendants 2-39 is proper, the Court drops them from this action.

## II. BACKGROUND

On July 6, 2011, Plaintiff filed this lawsuit against 39 Doe Defendants, alleging that Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license, ("*Throated 30*"), using an internet peer-to-peer file sharing network known as BitTorrent, and thereby violated the Copyright Act, 17 U.S.C. § 101-1322. Compl. ¶¶ 18-24. Plaintiff alleges that

because the alleged infringement occurred on the internet, Defendants acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶ 8. As a result, Plaintiff contends that it cannot determine Defendants' true identities without procuring the information from Defendants' respective Internet Service Providers ("ISPs"), which can link the IP addresses to a real individual or entity. *Id.* Consequently, Plaintiff asks the Court to grant it expedited discovery to issue subpoenas to the relevant ISPs so that the ISPs will produce the name, address, telephone number, email address, and Media Access Control ("MAC") information attached to each IP address that Plaintiff to date has compiled through its own investigations. Pl.'s App. at 23–24.

### III.  LEGAL STANDARD

Pursuant to Rule 26(d)(1), a court may authorize early discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to permit such discovery. *See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the record . . . and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275 (citation & quotation marks omitted). In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as doe defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

**IV. DISCUSSION**

**A. Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

Under the first factor, the Court must examine whether Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subject to jurisdiction in this Court. *See id.* at 578. Here, Plaintiff proffers that it retained Media Copyright Group, LLC ("MCG"), which utilized forensic software to identify Defendants' IP addresses on the date and time that they engaged in the alleged distribution of *Throated 30* via the BitTorrent protocol, and has compiled the information into a log attached as Exhibit A to Plaintiff's Complaint. Pl.'s App. at 6; Compl. ¶ 24 & Ex. A; Hansmeier Decl. ¶ 15. Plaintiff explains that Defendants gained access to the internet only by setting up an account through various Internet Service Providers ("ISP"), and that by providing the ISPs the information detailed in Exhibit A, the ISPs can look up the identity of the Defendants by reviewing their respective subscriber activity logs. Pl.'s App. at 6. Additionally, Plaintiff indicates that it used geolocation technology to trace these IP addresses to a point of origin within the state of California. Compl. ¶ 3. Taken together, the Court finds that Plaintiff has come forward with sufficient information demonstrating that the Defendants are real persons or entities who may be subject to jurisdiction in this Court. *See Pink Lotus Entm't. LLC v. Does 1-46*, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (finding that the plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the unique IP addresses of individuals engaged in P2P sharing and using geolocation technology to trace the IP addresses to a point of origin within the state of California).

**B. Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the Defendants. *See Columbia Ins. Co.*, 185 F.R.D. at 579. "This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants." *Id*. Here, Plaintiff contends that it has exhausted all possible means to find the Defendants' names, addresses, phone numbers, email addresses, and MAC addresses. Pl.'s App. at 6. In support, Plaintiff cites to paragraphs 12 through 20 of Mr.

Hansmeier's Declaration. Pl.'s App. at 7. Reviewing Mr. Hansmeier's testimony, he states that as a technician for MCG, he used "proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of BitTorrent-based swarms involved in distributing the copyrighted creative works relevant to Plaintiff's action." Hansmeier Decl. ¶ 12, Dkt. No. 6-1. Presumably, the "swarms" MCG monitored include any swarm or swarms involved in distributing *Throated 30*.[1] First, to locate swarms where peers were distributing Plaintiff's copyrighted works (again, presumably, including *Throated 30*), MCG located torrent files on torrent indexing sites and internet file-sharing forums sharing the names of Plaintiff's copyrighted works. *Id*. ¶ 13. MCG then located a swarm by connecting to a BitTorrent tracker, using Distributed Hash Tables, and Peer Exchange.[2] *Id*. ¶ 14. After locating the swarm, MCG uses its software "to conduct an exhaustive real time 'fingerprint' of the swarm," which includes what activities each peer was engaging in, the date and time that each Defendant was observed by the software as engaging in infringing activity, and the IP address assigned to each Defendant at that time. *Id*. According to Mr. Hansmeier, "[a]fter recording granular level data about every peer in the swarm, the next step is to carefully and thoroughly review the data produced by MCG's proprietary forensic software to determine what peers were actually involved in illegally reproducing and distributing [Plaintiff's] copyrights works." *Id*. ¶ 18. Toward

---

[1] Notably, Mr. Hansmeier's description of the steps taken to identify the Defendants are not specific to efforts in this case, but speak in terms of how MCG has generally assisted Plaintiff "in identifying instances of copyright infringement on BitTorrent-based peer-to-peer networks . . . ." Hansmeier Decl. ¶ 12. In fact, aside from a vague statement that MCG was hired "to collect and document evidence of the unauthorized reproduction and distribution of the copyrighted creative works, including the *works* referenced in Exhibit A to the Complaint," at no point in his Declaration does Mr. Hansmeier even mention the copyrighted work at issue in this case – *Throated 30* – or go into detail about how MCG identified the 39 Defendants in this action. *See* Hansmeier Decl. ¶ 2 (emphasis added). Reviewing Exhibit A to the Complaint, it makes no reference to *Throated 30*, so it is unclear whether Mr. Hansmeier, himself, understands which copyrighted work is at issue in this action.

[2] Mr. Hansmeier explains that a "BitTorrent tracker . . . is a server that contains an updated list of peers in a swarm." *Id*. ¶ 14. He also indicates that "Distributed Hash Tables . . . allow each peer to serve as a 'mini-tracker.'" and that "Peer Exchange . . . allows peers to share data about other peers in the swarm without the use of a tracker." *Id*.

4

that end, he explains, "[w]hen a verified peer was located who was making files subject to Plaintiff's license available for distribution and reproduction via the BitTorrent protocol, [Mr. Hansmeier] downloaded and retained both the torrent files and the actual digital reproductions being offered for distribution to verify that the digital copies being distributed in the swarm were in fact copies of the copyrighted creative works subject to Plaintiff's license." *Id*. ¶ 19. Particularly, Mr. Hansmeier downloaded the file and compared it to an actual copy of the copyrighted work to confirm that the file was a "substantially-similar reproduction of the copyrighted creative work." *Id*. As part of this process, MCG also traced each offending IP address to specific internet service providers ("ISP"). *Id*. ¶ 18.

Assuming that the foregoing steps were utilized to investigate Defendants' activity with respect to *Throated 30* on the BitTorrent protocol, the Court finds that Plaintiff has sufficiently described its efforts to identify Defendants.

**C. Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes whether Plaintiff's Complaint would likely survive a motion to dismiss. *See Columbia Ins. Co.*, 185 F.R.D. at 579. In its Complaint, Plaintiff has asserted a federal copyright infringement claim and a claim for civil conspiracy under California law.

To state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid copyright, and (2) copying of constituent elements of the copyrighted work that are original. *Rice v. Fox Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "To be liable for direct infringement, one must 'actively engage in' and 'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199 (N.D. Cal. 2004). Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that *Throated 30* is the subject of a copyright registration application pending in the United States Copyright Office and that Plaintiff is the exclusive rightsholder of the distribution and reproduction rights of *Throated 30*. Compl. ¶¶ 18, 20, 26. Plaintiff has also alleged that the Defendants reproduced and distributed *Throated 30* via BitTorrent to numerous third parties. Compl. ¶ 23.

Additionally, Plaintiff has alleged that Defendants actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent file-sharing protocol, including intentionally downloading a torrent file particular to *Throated 30*, loading that torrent file into the BitTorrent client, entering a BitTorrent swarm particular to *Throated 30*, and ultimately, downloading and uploading pieces of a *Throated 30* file to eventually obtain a whole copy of the file. Compl. ¶¶ 11-13, 23. Based on these allegations, the Court finds that Plaintiff has pled a *prima facie* case of copyright infringement and set forth sufficient supporting facts to survive a 12(b)(6) challenge.

Plaintiff has also asserted a claim for civil conspiracy pursuant to California law. Whether this claim would survive a 12(b)(6) challenge, however, presents a closer question. At least one other court in this District has recognized that a civil conspiracy claim does not provide a substantive basis for liability under California law, but is merely a mechanism for imposing vicarious liability. *Millennium TGA, Inc. v. Does 1-21*, 2011 WL 1812786, at *2 (N.D. Cal. May 12, 2011). As the *Millennium* court noted, "[w]hile the Ninth Circuit has not addressed the subject, other district courts have held that state law civil conspiracy claims based on copyright infringement are preempted." *Id*. Thus, there is some doubt as to the viability of Plaintiff's civil conspiracy claim. Nevertheless, because Plaintiff has sufficient pled a copyright infringement claim – which is enough to satisfy the third factor – the Court need not determine the fate of Plaintiff's civil conspiracy claim at this juncture.

**D.   Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable likelihood that the discovery it requests will lead to the identification of Defendants such that it may effect service of process. *See Columbia Ins.*, 185 F.R.D. at 580. As indicated above, Plaintiff contends that the key to locating the Defendants is through the IP addresses associated with the alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with

6

this case. *See* Hansmeier Decl. ¶¶ 16-17; Declaration of Brett L. Gibbs ¶ 4, Dkt. No. 6-2. Taking this into account, the Court finds that Plaintiff has made a sufficient showing as to this factor.

**E.    Summary**

Taking the foregoing factors into consideration, the Court finds that Plaintiff has demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the Court finds that the expedited discovery sought furthers the interests of justice and presents minimal inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in line with Rule 26(d).

**F.    Joinder of 39 Defendants**

Having found that expedited discovery is appropriate, the question becomes whether the discovery sought is proper as to all 39 Defendants. Anticipating this question, Plaintiff presents a lengthy discussion in its Application as to why its decision to name join 39 Defendants is justified under Rule 20.[3] *See* Pl.'s App. at 10-23. Recently, courts in this District – as well as several other federal districts – have come to varying decisions about the proprietary of joining multiple defendants in BitTorrent infringement cases. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at 3 (N.D. Cal. Aug. 15, 2011) (listing a sample of recent decisions). This Court has carefully reviewed such decisions and notes that they are highly dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the allegations regarding the doe defendants' alleged infringement on the protected work. Both of these factors guide the Court's joinder analysis in this matter, as well.

Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly detailed explanation about how the BitTorrent protocol operates and how it is different from

---

[3] Rule 20(a)(2) governs permissive joinder of defendants, and provides in relevant part:
(2) ***Defendants.*** Persons . . . may be joined in one action as defendants if:
  **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
  **(B)** any question of law or fact common to all defendants will arise in the action.

7

previous file-sharing protocols. *See* Pl.'s App. at 13-17. Based on this information, this Court finds that Plaintiff has at least presented a reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single swarm downloading or uploading a piece of the same seed file may fall within the definition of "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a)(1)(A). Plaintiff's pitfall, however, is that it has failed to put forth specific facts showing that Defendants' conduct falls within these parameters.

First, although Plaintiff contends that individuals using the BitTorrent protocol "engage in deep and sustained collaboration with their fellow infringers," Plaintiff has failed to present any facts demonstrating such collaboration among the 39 Defendants in this action. Reviewing Exhibit A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred on 23 different days spanning a period of nearly seven weeks from May 12, 2011 through June 29, 2011. *See* Dkt. No. 1 at 13. On the majority of dates listed, only a single Defendant entered a *Throated 30* swarm. At most, only four Defendants entered a *Throated 30* swarm on a single day – and that occurred just once and at staggered times of 4:03 pm, 5:02 pm, 6:44 pm, and 11:16 pm. Plaintiff has not proffered any convincing explanation as to how this sporatic and generally isolated activity surrounding *Throated 30* using the BitTorrent protocol is sufficient to link each of the 39 Defendants such that joinder of each of them in a single lawsuit is proper.[4]

Second, Plaintiff has not demonstrated that Defendants were part of a single *Throated 30* swarm sharing in the exact same seed file. As indicated above, in his Declaration, Mr. Hansmeier explains that in compiling Defendants' IP addresses, he located "swarms" where peers were distributing Plaintiff's copyrighted "works." *See* Hansmeier Decl. ¶¶ 13, 14, 18, 19. Although Mr. Hansmeier states that "[a]fter locating a swarm," he used MCG's forensic software to take a "fingerprint" and thereby collect information about the peers participating in the swarm, he provides

---

[4] Stated another way, Plaintiff must explain how, as the duration of a *Throated 30* swarm protracts and the number of peers entering the swarm grows, it remains likely Defendants act in concert with each other. For instance, the Court queries how likely it is that a Defendant entering a swarm on June 29 obtained any piece of a *Throated 30* file from a Defendant who entered the swarm on May 12.

8

1 no information about the *Throated 30* swarm(s) he located. As a result, there is nothing in the
2 record indicating that Defendants were part of the same, discernable *Throated 30* swarm. Moreover,
3 although Mr. Hansmeier states that he took steps to verify "that the digital copies being distributed
4 in the swarm were in fact copies of the copyrighted creative works subject to Plaintiff's license," he
5 fails to provide any description of the file(s) that were allegedly shared among Defendants. *See*
6 Hansmeier Decl. ¶ 19. Thus, even if Defendants were in a *Throated 30* swarm, Plaintiff has failed to
7 proffer any evidence that Defendants distributed the same *Throated 30* file.[5]

8      Simply put, based on the allegations in Plaintiffs' Complaint and the information in
9 Plaintiff's Application and supporting materials, Defendants' alleged conduct is too attenuated to
10 support joinder even at this stage of the case. Before this Court will allow Plaintiff to serve
11 discovery regarding the identity of Does 2 - 39, Plaintiff must at a minimum demonstrate that these
12 Defendants were present in the same *Throated 30* swarm on BitTorrent and shared pieces of the
13 same seed file containing *Throated 30*. Armed with such facts, Plaintiff may then plausibly argue
14 that Defendants were engaged in the same transaction or occurrence or series of transactions or
15 occurrences such that this Court will permit Plaintiff to seek expedited discovery as to all named doe
16 defendants. Having failed to make this showing, the Court finds that there is no present basis to
17 support joinder of Defendants 2-39. Because these Defendants have not been served with process
18 and therefore have not appeared in this lawsuit, the Court drops Defendants 2 - 39 from this action
19 and dismisses Plaintiff's claims as to these Defendants without prejudice. *See* Fed. R. Civ. P. 21;
20 *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (recognizing that the trial court has
21 discretion to sever misjoined parties pursuant to Rule 21, "so long as no substantial right will be
22 prejudiced by the severance.")

### V. CONCLUSION

24     For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART**

---

[5] In its Application, Plaintiff contends that "all of the events involving the Doe Defendants are logically related to the illegal distribution of a single file . . . ." Pl.'s App. at 18. Plaintiff, however, omits any citation to the record in support; thus, this representation is unsubstantiated.

9

Plaintiff's Ex Parte Application for Expedited Discovery (Dkt. No. 6) as follows:

The Court **DENIES** Plaintiff's Application with respect to Does 2 - 39. Further, the Court severs Does 2 - 39 from this action and dismisses Plaintiff's claims against them **WITHOUT PREJUDICE.**

The Court **GRANTS** Plaintiff's Application with respect to Doe 1 as follows.

1. IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on Doe 1's ISP listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks information sufficient to identify Doe 1, including the name, address, telephone number, and email address of Doe 1. Plaintiff's counsel shall issue the subpoena and attach a copy of this Order.

2. IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon them to serve Doe 1 with a copy of the subpoena and a copy of this Order. The ISP may serve Doe 1 using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class mail or via overnight service.

3. IT IS FURTHER ORDERED that Doe 1 shall have 30 days from the date of service upon him or her to file any motions in this Court contesting the subpoena (including a motion to quash or modify the subpoena). If that 30-day period lapses without Doe 1 contesting the subpoena, the ISP shall have 10 days to produce the information responsive to the subpoena to Plaintiff.

4. IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

5. IT IS FURTHER ORDERED that the ISP that receives a subpoena pursuant to this order shall confer with Plaintiff and shall not assess any charge in advance of providing the information requested in the subpoena. The ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost reports that serve as a basis for such billing summary and any costs claimed by the ISP.

6. IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this order along with any subpoenas issued pursuant to this order to the necessary entities.

7. IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a

Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its complaint.

**IT IS SO ORDERED.**

Dated: August 23, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge