UNITED STATES  DISTRICT COURT

Northern District of California

| | |
|---|---|
| OPENMIND SOLUTIONS, INC., | No. C 11-3311 MEJ |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED EXPEDITED DISCOVERY** |
| v. | |
| DOES 1-39, | |
| Defendants. | **Docket No. 18** |

## I.  INTRODUCTION

Plaintiff OpenMind Solutions, Inc. ("Plaintiff") has filed an ex parte Application pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 45, requesting leave to take expedited discovery to determine the identity of the 39 Doe Defendants (collectively, "Defendants") named in this action. Dkt. No. 18 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's Application.

## II.  BACKGROUND

On July 6, 2011, Plaintiff filed this lawsuit against 39 Doe Defendants, alleging that Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license, ("*Throated 30*"), using an internet peer-to-peer file sharing network known as BitTorrent, and thereby violated the Copyright Act, 17 U.S.C. §§ 101-1322. Compl. ¶¶ 18-24, Dkt. No. 1. Plaintiff asserted that because the alleged infringement occurred on the internet, Defendants acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶ 8. As a result, Plaintiff contended that it could not determine Defendants' true identities without procuring the

1   information from Defendants' respective Internet Service Providers ("ISPs"), which can link the IP

2   addresses to a real individual or entity. *Id.* Consequently, Plaintiff filed a request that the Court

3   grant it expedited discovery to issue subpoenas to the relevant ISPs so that the ISPs would produce

4   the name, address, telephone number, and email address information attached to each IP address that

5   Plaintiff had compiled through its own investigations. Pl.'s July 7, 2011 App. at 23–24, Dkt. No. 6.

6       On August 23, 2011, the Court granted Plaintiff's Ex Parte Application as to one Defendant,

7   but found misjoinder for the remaining Doe Defendants. Order Granting in Part and Denying in Part

8   Pl.'s Ex Parte Appl. for Leave to Take Ltd. Expedited Disc, Dkt. No. 11. The Court explained that

9   Plaintiff "failed to put forth specific facts showing that Defendants' conduct" fell within the

10  "definition of 'same transaction, occurrence, or series of transactions or occurrences . . .' necessary

11  to establish joinder." *Id.* at 8 (citing Fed. R. Civ. P. 20 (a)(1)(A)). The Court took issue with the

12  fact that the "alleged infringing activity occurred on 23 different days spanning a period of nearly

13  seven weeks," and that "Plaintiff ha[d] not demonstrated that Defendants were part of a single . . .

14  swarm sharing in the exact same seed file." *Id.* As a result, the Court found Defendants alleged

15  conduct "too attenuated to support joinder even at this [early] stage of the case" and severed all but

16  one defendant from the case. *Id.* at 9.

17      Plaintiff subsequently brought a Motion for Leave to File Amended Complaint on September

18  14, 2011 to address the Court's joinder concerns. Dkt. No. 12. The Court granted the motion on

19  September 21, 2011. Dkt. No. 14. Plaintiff filed its Amended Complaint ("FAC") on September 21,

20  2011. Dkt. No. 15. Plaintiff now brings this Ex Parte Application for Leave to Take Discovery with

21  Expanded Joinder Section. Dkt. No. 18.

22                              **III.   LEGAL STANDARD**

23      Pursuant to Rule 26(d)(1), a court may authorize early discovery before the Rule 26(f)

24  conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit

25  generally use a "good cause" standard to determine whether to permit such discovery. *See, e.g.,*

26  *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011);

27  *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  may be found where the need for expedited discovery, in consideration of the administration of

2  justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. The court

3  must perform this evaluation in light of "the entirety of the record . . . and [examine] the

4  reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275 (citation &

5  quotation marks omitted). In determining whether there is good cause to allow expedited discovery

6  to identify anonymous internet users named as doe defendants, courts consider whether: (1) the

7  plaintiff can identify the missing party with sufficient specificity such that the Court can determine

8  that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has

9  identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against

10  defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a

11  reasonable likelihood of being able to identify the defendant through discovery such that service of

12  process would be possible. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal.

13  1999).

14  ## IV. DISCUSSION

15  **A.      Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

16  Under the first factor, the Court must examine whether Plaintiff has identified the Defendants

17  with sufficient specificity, demonstrating that each Defendant is a real person or entity who would

18  be subject to jurisdiction in this Court. *Id.* at 578. Here, Plaintiff proffers that it retained Media

19  Copyright Group, LLC ("MCG"), which utilized forensic software to identify Defendants' IP

20  addresses on the date and time that they engaged in the alleged distribution of *Throated 30* via the

21  BitTorrent protocol, and has compiled the information into a log attached as Exhibit A to Plaintiff's

22  FAC. Pl.'s App. at 7; FAC, Ex. A; Hansmeier Decl. ¶¶ 2, 15-21, Dkt. No. 18-1. Plaintiff explains

23  that Defendants gained access to the internet only by setting up an account through various ISPs, and

24  that by providing the ISPs the information detailed in Exhibit A, the ISPs can look up the identity of

25  the Defendants by reviewing their respective subscriber activity logs. Pl.'s App. at 7; Hansmeier

26  Decl. ¶¶ 22, 27. Additionally, Plaintiff indicates that it used geolocation technology to trace these IP

27  addresses to a point of origin within the state of California. FAC ¶ 3. Taken together, the Court

28

3

1   finds that Plaintiff has come forward with sufficient information demonstrating that the Defendants

2   are real persons or entities who may be subject to jurisdiction in this Court. *See Pink Lotus Entm't.*

3   *LLC v. Does 1-46*, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (finding that the plaintiff met

4   its burden to identify the Doe defendants with sufficient specificity by identifying the unique IP

5   addresses of individuals engaged in P2P sharing and using geolocation technology to trace the IP

6   addresses to a point of origin within the state of California); *MCGIP, LLC v. Does 1-149*, 2011 WL

7   3607666, at *2 (N.D. Cal. Aug. 15, 2011) (finding that the plaintiff had identified the Doe

8   defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP

9   address assigned to them on the day it alleged the particular defendant engaged in the infringing

10  conduct).

11  **B.      Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

12          Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the

13  Defendants. *Columbia Ins. Co.*, 185 F.R.D. at 579. "This element is aimed at ensuring that

14  plaintiffs make a good faith effort to comply with the requirements of service of process and

15  specifically identifying defendants." *Id.* Here, Plaintiff contends that it has exhausted all possible

16  means to find the Defendants' names, addresses, phone numbers, and email addresses. Pl.'s App. at

17  8. In support, Plaintiff cites to paragraphs 18 through 21 and 24 through 26 of Mr. Hansmeier's

18  Declaration. *Id.* Reviewing Mr. Hansmeier's testimony, he states that as a technician for MCG, he

19  used "proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring

20  of the BitTorrent-based swarm involved in distributing the copyrighted file relevant to Plaintiff's

21  action." Hansmeier Decl. ¶ 16.

22          First, to locate swarms[1] where peers were distributing *Throated 30*, MCG located torrent

23  _____

24          [1]P2P networks distribute infringing copies of copyrighted works with file sharing software
    such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a
25  digital file of a work available to the public from his or her computer. Hansmeier Decl. ¶¶ 8-11.
    This file is referred to as the first "seed." *Id.* ¶ 9. Other users, who are referred to as "peers," then
26  access the Internet and request the file. *Id.* ¶¶ 9, 11. These users engage each other in a group,
    referred to as a "swarm," and begin downloading the seed file. *Id.* As each peer receives portions of
27  the seed, that peer makes those portions available to other peers in the swarm. *Id.* ¶ 11.

28

4

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    files on torrent indexing sites and internet file-sharing forums sharing the names of Plaintiff's

2    copyrighted works. *Id*. ¶¶ 18-19. To accomplish this, MCG utilized three methods. According to

3    Mr. Hansmeier, the most common means of locating the swarm is to connect to a BitTorrent tracker,

4    which is a server that contains an updated list of peers in the swarm. *Id.* ¶ 19. A typical torrent file

5    contains a list of multiple trackers associated with the underlying file. *Id.* Other means of locating

6    the swarm include using Distributed Hash Tables, which allow each peer to serve as a

7    "mini-tracker" and Peer Exchange, which allows peers to share data about other peers in the swarm

8    without the use of a tracker. *Id.*

9        After locating the swarm, MCG uses its software "to conduct an exhaustive real time

10    'fingerprint' of the swarm," which includes the date and time when a portion of *Throated 30* was

11    downloaded successfully to an infringer's computer, the time and date the infringer was last

12    successfully connected to the BitTorrent network, the IP address assigned to the infringer's

13    computer, the size of the file, the percent of the file downloaded, and the percent of the file on the

14    infringer's computer which is available at that moment for copying by other peers. *Id.* ¶ 20.

15    According to Mr. Hansmeier, "[a]fter recording granular level data about every peer in the swarm,

16    the next step is to carefully and thoroughly review the data produced by MCG's proprietary forensic

17    software to determine what peers were actually involved in illegally reproducing and distributing

18    Plaintiff's Video." *Id.* ¶ 25. Toward that end, he explains, "[w]hen a verified peer was located who

19    was [making] Plaintiff's copyrighted Video available for distribution and reproduction via the

20    BitTorrent protocol, I downloaded and retained both the torrent files and the actual digital

21    reproductions being offered for distribution to verify that the digital copies being distributed in the

22    swarm were in fact copies of the Plaintiff's copyrighted Video." *Id.* Particularly, Mr. Hansmeier

23    downloaded the file and compared it to an actual copy of *Throated 30* to confirm that the file was a

24    "substantially-similar reproduction of the copyrighted Video." *Id.* As part of this process, MCG

25    also traced each offending IP address to specific ISPs. *Id.* ¶¶ 22-24.

26        Based on Mr. Hansmeier's explanation of the foregoing steps as utilized to investigate

27    Defendants' activity with respect to *Throated 30* on the BitTorrent protocol, the Court finds that

28

1   Plaintiff has sufficiently described its efforts to identify Defendants.

2   **C.      Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

3           Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes

4   whether Plaintiff's Complaint would likely survive a motion to dismiss. *Columbia Ins. Co.*, 185

5   F.R.D. at 579.  In its Complaint, Plaintiff has asserted a federal copyright infringement claim and a

6   claim for civil conspiracy under California law.

7           To state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid

8   copyright, and (2) copying of constituent elements of the copyrighted work that are original. *Rice v.*

9   *Fox Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv.*

10  *Co.*, 499 U.S. 340, 361 (1991)).  "To be liable for direct infringement, one must 'actively engage in'

11  and 'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195,

12  1199 (N.D. Cal. 2004).  Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that

13  *Throated 30* is the subject of a copyright registration application pending in the United States

14  Copyright Office and that Plaintiff is the exclusive rightsholder of the distribution and reproduction

15  rights of *Throated 30*.  FAC ¶¶ 6, 25.  Plaintiff has also alleged that the Defendants reproduced and

16  distributed *Throated 30* via BitTorrent to numerous third parties via the same swarm. *Id.* ¶ 29.

17  Additionally, Plaintiff has alleged that Defendants actively engaged in or directly caused the

18  copying by completing each of the steps in the BitTorrent file-sharing protocol, including

19  intentionally downloading a torrent file particular to *Throated 30*, loading that torrent file into the

20  BitTorrent client, entering a BitTorrent swarm particular to *Throated 30*, and ultimately,

21  downloading and uploading pieces of a *Throated 30* file to eventually obtain a whole copy of the

22  file.  FAC ¶¶ 17-19, 29.  Based on these allegations, the Court finds that Plaintiff has pled a *prima*

23  *facie* case of copyright infringement and set forth sufficient supporting facts to survive a motion to

24  dismiss.

25          Plaintiff has also asserted a claim for civil conspiracy pursuant to California law.  Whether

26  this claim would survive a motion to dismiss, however, presents a closer question.  At least one

27  other court in this District has recognized that a civil conspiracy claim does not provide a

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

substantive basis for liability under California law, but is merely a mechanism for imposing vicarious liability. *Millennium TGA, Inc. v. Does 1-21*, 2011 WL 1812786, at *2 (N.D. Cal. May 12, 2011). As the *Millennium* court noted, "[w]hile the Ninth Circuit has not addressed the subject, other district courts have held that state law civil conspiracy claims based on copyright infringement are preempted." *Id*. Thus, there is some doubt as to the viability of Plaintiff's civil conspiracy claim. Nevertheless, because Plaintiff has sufficient pled a copyright infringement claim – which is enough to satisfy the third factor – the Court need not determine the fate of Plaintiff's civil conspiracy claim at this juncture.

**D.      Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

        The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable likelihood that the discovery it requests will lead to the identification of Defendants such that it may effect service of process. *Columbia Ins. Co.*, 185 F.R.D. at 580. As indicated above, Plaintiff contends that the key to locating Defendants is through the IP addresses associated with the alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with this case. Hansmeier Decl. ¶¶ 22-23; Gibbs Decl. ¶ 4, Dkt. No. 18-2. Taking this into account, the Court finds that Plaintiff has made a sufficient showing as to this factor.

**E.      Summary**

        Taking the foregoing factors into consideration, the Court finds that Plaintiff has demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the Court finds that the expedited discovery sought furthers the interests of justice and presents minimal inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in line with Rule 26(d).

**F.      Joinder of 39 Defendants**

        Having found that expedited discovery is appropriate, the question becomes whether the discovery sought is proper as to all 39 Defendants. Anticipating this question, Plaintiff presents a

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   lengthy discussion in its Application as to why its decision to name join 39 Defendants is justified

2   under Rule 20. Pl.'s App. at 11-22. Under Rule 20, defendants may be joined in one action when

3   claims arise from the same transaction or occurrence or series of transactions or occurrences, and

4   any question of law or fact in the action is common to all defendants. Fed. R. Civ. P. 20(a)(2).

5   The permissive joinder rule "is to be construed liberally in order to promote trial convenience and to

6   expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save*

7   *Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of

8   Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties;

9   joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v.*

10  *Gibbs*, 383 U.S. 715, 724 (1966). Rule 20(a) imposes two specific requisites to the joinder of

11  parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or

12  arising out of the same transaction or occurrence, and (2) some question of law or fact common to

13  all the parties must arise in the action. Fed. R. Civ. P. 20(a). Both of these requirements must be

14  satisfied in order to justify party joinder under Rule 20(a). *Id.* In situations of misjoinder of parties,

15  Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or

16  drop a party."

17          1.      <u>Same Transaction, Occurrence, or Series of Transactions or Occurrences</u>

18          "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of

19  transactions or occurrences' to require a degree of factual commonality underlying the claims."

20  *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010)

21  (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Typically, this means that a party

22  "must assert rights . . . that arise from related activities-a transaction or an occurrence or a series

23  thereof." *Id.* (citation omitted). Recently, courts in this District – as well as several other federal

24  districts – have come to varying decisions about the proprietary of joining multiple defendants in

25  BitTorrent infringement cases. *See MCGIP*, 2011 WL 3607666, at 3 (listing a sample of recent

26  decisions). This Court has carefully reviewed such decisions and notes that they are highly

27  dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-

28

8

1    sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged

2    infringement of the protected work.  Both of these factors guide the Court's joinder analysis in this

3    matter as well.

4            Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly

5    detailed explanation about how the BitTorrent protocol operates.  *See* Hansmeier Decl. ¶¶ 8-13.  Mr.

6    Hansmeier explains:

7            The sharing of a file via the BitTorrent protocol operates as follows.
             First, the initial seeder creates a small "torrent" file that contains
8            instructions for how to find the seed. The seeder uploads the torrent
             file to one or more of the many torrent indexing sites. As Internet users
9            come across the torrent file, they intentionally elect to load the torrent
             files in their BitTorrent client, which uses the instructions contained in
10           the torrent file to locate the seed. These users now are peers in the
             swarm with respect to that digital reproduction. The BitTorrent
11           protocol dictates that each peer download a random portion of the file
             (a "piece") from the seed. After a peer has downloaded its first piece,
12           it then shares that piece and subsequent pieces with other peers in the
             swarm. The effect of this protocol is that each peer is both copying and
13           distributing copyrighted material at the same time. That is, each peer
             in a BitTorrent network has acted and acts in cooperation with other
14           peers by agreeing to provide, and actually providing, an infringing
             reproduction of at least a substantial portion of a copyrighted work in
15           anticipation of the other peers doing likewise. Joining a BitTorrent
             network is an intentional act, requiring the selection by a peer of
16           multiple links to do so.

17   *Id.* ¶ 11.

18           The Court finds that Plaintiff has also provided enough specificity to make a preliminary

19   determination that the 39 Doe Defendants here were part of the same swarm.  Reviewing Exhibit A

20   to Plaintiff's FAC, Defendants' alleged infringing activity occurred from May 12, 2011 through

21   June 29, 2011.  FAC, Ex. A.  While this period might seem protracted, such time periods can be

22   somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the

23   same swarm, downloading and uploading the same file.  With respect to the particular swarm at

24   issue here, the hash (an alphanumeric representation of a digital file) associated with the copied

25   file's torrent file remained the same within the swarm.  FAC ¶ 7.  Further, the alleged infringers all

26   participated in the same exact swarm and downloaded the same exact copyrighted file.  Hansmeier

27   Decl. ¶ 26.  And, even after a Doe Defendant disconnects from the swarm, the parts of the file that

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

9

1   he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in

2   the swarm. *Id.* ¶ 12.

3          Based on these allegations, Plaintiff's claims against Defendants appear logically related.

4   Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be

5   responsible for distributing the work to the other putative Defendants, who are also using the same

6   file-sharing protocol to copy the identical copyrighted material. *See Disparte v. Corporate Exec.*

7   *Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related"

8   and this test is "flexible.").  While Defendants may be able to rebut these allegations later, Plaintiff

9   has sufficiently alleged that its claims against Defendants potentially stem from the same transaction

10  or occurrence, and are logically related. *See Arista Records LLC v. Does 1–19*, 551 F. Supp. 2d 1,

11  11 (D.D.C. 2008) ("While the Court notes that the remedy for improper joinder is severance and not

12  dismissal, . . . the Court also finds that this inquiry is premature without first knowing Defendants'

13  identities and the actual facts and circumstances associated with Defendants' conduct.").  Plaintiff

14  has made a preliminary showing that these Defendants were present in the same *Throated 30* swarm

15  on BitTorrent and shared pieces of the same seed file containing *Throated 30*.

16         2.      Question of Law or Fact Common to All Defendants

17         Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a

18  common question of law or fact.  Here, Plaintiff will have to establish the same legal claims

19  concerning the validity of the copyright in *Throated 30* and the infringement of the exclusive rights

20  reserved to Plaintiff as copyright holder.  Furthermore, Plaintiff alleges that the Defendants utilized

21  the same BitTorrent file-sharing protocol to illegally distribute and download *Throated 30* and,

22  consequently, factual issues related to how BitTorrent works and the methods used by Plaintiff to

23  investigate, uncover, and collect evidence about the infringing activity will be essentially identical

24  for each Defendant. *See Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343

25  (D.D.C. 2011).  The Court recognizes that each putative defendant may later present different factual

26  and substantive legal defenses, "but that does not defeat, at this stage of the proceedings, the

27  commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *Id.*

28

10

1        3.        Prejudice to Any Party or Needless Delay

2        Finally, the Court must assess whether joinder would prejudice the parties or result in

3    needless delay.  Joinder in a single case of putative defendants who allegedly infringed the same

4    copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative

5    defendants.  *Id.* at 344; *London–Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass.

6    2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve

7    similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to

8    share copyrighted sound recordings and the discovery of defendants' identities through the use of a

9    Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative

10    efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if

11    any, that other John Does have raised.").

12        Here, Plaintiff seeks to obtain identifying information from ISPs so that it can properly name

13    and serve Defendants.  If the Court were to consider severance at this juncture, Plaintiff would face

14    significant obstacles in its efforts to protect its copyright from illegal file-sharers, and this would

15    only needlessly delay the case.  Plaintiff would be forced to file 39 separate lawsuits, in which it

16    would then move to issue separate subpoenas to ISPs for each defendant's identifying information.

17    Plaintiff would additionally be forced to pay the Court separate filing fees in each of these cases,

18    which would further limit its ability to protect its legal rights.  "This would certainly not be in the

19    'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive

20    determination of the action.'"  *Call of the Wild*, 770 F. Supp. 2d at 334 (citation omitted) (declining

21    to sever defendants where parties joined promotes more efficient case management and discovery

22    and no party prejudiced by joinder).

23        Further, Defendants are currently identified only by their IP addresses and are not named

24    parties.  Consequently, they are not required to respond to Plaintiff's allegations or assert a defense.

25    Defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case against them,

26    but they cannot demonstrate any harm that is occurring to them before that time.  *Id.*

27        Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

11

1    permissive joinder under Rule 20(a)(2).  The putative defendants are not prejudiced but likely

2    benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

3    material and seek redress from Defendants, who have allegedly engaged in infringing activity.  To

4    be fair, the Court recognizes that the questions of joinder and severance must be deferred until after

5    discovery has been authorized and any motions to quash filed.  The Court is also cognizant of the

6    logistical and administrative challenges of managing a case with numerous putative defendants, a

7    number of whom may seek to file papers pro se.  However, severing the putative defendants at this

8    early stage is no solution to ease the administrative burden of the cases.  The Court therefore

9    declines to sever the Doe Defendants at this time.

10                               **V.  CONCLUSION**

11           For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for

12   Expedited Discovery (Dkt. No. 18) as follows:

13           1.  IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on

14   Does 1-39's ISPs listed in Exhibit A to the Amended Complaint by serving a Rule 45 subpoena that

15   seeks information sufficient to identify the Doe Defendants, including the name, address, telephone

16   number, and email address of Does 1-39.  Plaintiff's counsel shall issue the subpoena and attach a

17   copy of this Order.

18           2.  IT IS FURTHER ORDERED that each ISP will have 30 days from the date of service

19   upon it to serve Does 1-39 with a copy of the subpoena and a copy of this Order.  The ISPs may

20   serve the Doe Defendants using any reasonable means, including written notice sent to his or her last

21   known address, transmitted either by first-class mail or via overnight service.

22           3.  IT IS FURTHER ORDERED that Does 1-39 shall have 30 days from the date of service

23   upon him, her, or it to file any motions in this Court contesting the subpoena (including a motion to

24   quash or modify the subpoena).  If that 30-day period lapses without Does 1-39 contesting the

25   subpoena, the ISP shall have 10 days to produce the information responsive to the subpoena to

26   Plaintiff.

27           4.  IT IS FURTHER ORDERED that, because no appearance by a person at a deposition is

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

12

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    required by the subpoena, instead only production of documents, records and the like is required, the

2    witness and mileage fees required by Rule 45(b)(1) of the Federal Rules of Civil Procedure do not

3    apply and no such fees need be tendered.  Any ISP that receives a subpoena pursuant to this Order

4    shall confer with Plaintiff and shall not assess any charge in advance of providing the information

5    requested in the subpoena.  The ISP that receives a subpoena and elects to charge for the costs of

6    production shall provide a billing summary and cost reports that serve as a basis for such billing

7    summary and any costs claimed by the ISP.

8         5.  IT IS FURTHER ORDERED that the subpoenaed entity shall preserve all subpoenaed

9    information pending the ISP's delivering such information to Plaintiff or the final resolution of a

10   timely filed and granted motion to quash the subpoena with respect to such information.

11        6.  IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a

12   subpoena may be used by Plaintiff solely for the purpose of protecting its rights under the Copyright

13   Act, 17 U.S.C. §§ 101-1322.

14        7.  IT IS FURTHER ORDERED that Plaintiff shall serve each Doe Defendant with the

15   summons, complaint, and other documents required by Civil Local Rule 4-2 within 120 days of

16   learning that Doe's identity.

17        8.  IT IS FURTHER ORDERED that should Plaintiff engage in settlement negotiations with

18   any Doe Defendant, it shall not assert that that Doe is being sued in San Francisco, unless Plaintiff

19   believes that Doe to be a resident of this District or has a good faith belief, consistent with Federal

20   Rule of Civil Procedure 11(b), that it can otherwise establish personal jurisdiction over that Doe in

21   this District.

22        9.  IT IS FURTHER ORDERED that subpoenas authorized by this Order and issued pursuant

23   thereto shall be deemed appropriate court orders under 47 U.S.C. § 551.  In particular, 47 U.S.C. §

24   551(c)(2)(B) provides as follows:

25             (c) Disclosure of personally identifiable information

26             ***

27             (2) A cable operator may disclose such information if the disclosure is . . .

28

13

***

(B) subject to subsection (h) [relating to disclosures to governmental agencies] of this section, made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

This Order is an order authorizing such disclosure.

**IT IS SO ORDERED.**

Dated: October 7, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

14